# Steinruck's Appeal.

1. S. and wife conveyed her property to T., under the circumstances the deed was a mortgage, S. and wife remaining in possession. By two contemporaneous deeds some years afterwards, S. and wife released all their right, &c., to T., who agreed to sell to the wife in three years for a sum said to be the amount due T.; he to collect the rents and apply them to ground-rents, &c., and credit the surplus, "on account of the purchase-money." If the amount due T. be paid within three years by the wife with interest, &c., T. to reconvey to her, but in default, the agreement to be void; T. also, at the request of the wife, to sell the property at public sale, and pay her the proceeds beyond her indebtedness, &c. *Held*, that S. and wife, under the circumstances, were entitled to an account from T. and a reconveyance on payment of the balance due him.

[Steinruck's Appeal.]

2. T. sold the property at public sale under the provisions of the deed, to J., who afterwards conveyed to T.'s wife. Equity required the utmost fairness from T. in his dealings with Mrs. S. in enforcing her contract with him, and he having by fraud brought about the sale, it would be set aside and a reconveyance decreed.

3. The sale was subject to a mortgage which T. represented at three times the amount due; the amount represented by T. to be due himself was three times the actual debt. This was such fraud as would avoid the sale, and require him to account.

January 3d 1872. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Appeal from the decree at Nisi Prius, No. 46, to January Term 1869. In equity:

The bill was filed, January 19th 1869, by Jacob Steinruck and Elizabeth his wife against Edward Thiele and Sophia his wife.

The bill was for the redemption of certain real estate, the legal title and possession of which were in the defendants, and for an account of the rents and profits; the plaintiffs alleging that the defendants held the premises in mortgage and not by absolute title.

The case will sufficiently appear by the report of James Parsons, Esq., the master, and the opinion of the Supreme Court, and therefore no abstract of the pleadings or evidence is given.

The master reported:— * * *

"The premises are situated on the south side of Oxford street, in the city of Philadelphia, and include stores and dwellings, together with seven houses on a court at the rear end of the lot. The value of the land and buildings is about $18,000, over and above the encumbrances upon them.

"The respondents claim title to the property by a deed from the complainants, who, on their part, assert that the conveyance was made simply as a mortgage. * * * The facts are as follows:—

"Thiele, at the instance of Steinruck, and by the direction of Mr. Hanbest, Mrs. Steinruck's counsel, visited Harper in company with Steinruck for the purpose of buying a judgment held by Harper against Steinruck. The negotiation was effected by Steinruck, and a sale of the judgment was made to Thiele for less than its face. It amounted to $103.42, and Thiele paid for it only $90. The transaction was completed April 20th 1854. With the judgment marked to his use, Thiele repairs in company again with Steinruck to Mr. Hanbest, who issues a fi. fa. and levies upon the property of Mrs. Steinruck, which includes land on the other side of Oxford street, as well as the premises in dispute. Steinruck waives a sheriff's inquisition of the property, and it goes to sale immediately, a month earlier than it could had the proceedings been adverse. A notice is prepared by the direction of Mr. Hanbest, and read at the sheriff's sale on the first Monday of May 1854, by his clerk, in the presence of Thiele; and by this notice all bidders are warned that Steinruck had no title

to the premises about to be sold by the sheriff. Each lot was sold in a lump. The property on the north side of Oxford street was bought by Thiele for $275; and the premises in dispute for $375, subject to a ground-rent of $186 a year. The ground-rent was the consideration not only for the land, but also for $1100, which Joseph R. Paul advanced on July 8th 1852, when he conveyed the premises to Elizabeth Steinruck in fee. The sheriff's deed to Thiele was dated June 10th 1854.

" On June 23d 1854, Jacob Steinruck and Elizabeth his wife joined in a conveyance of the premises to Thiele for the recited consideration of $1000, though no money actually passed. On the same date, Thiele conveyed his title to the property on the north side of Oxford street to Elizabeth Steinruck, and recited the $275 as the consideration, though he did not receive that sum, but charged it to Mrs. Steinruck in his account with her. Thiele then bought 34 shares in the Germania Building and Saving Fund Association; for which he paid $612, an equivalent, it is probable, for the dues already paid upon them. On the 13th of August 1854, he gave a mortgage upon the premises to the association for the sum of $6800, though he received only $4470. The dues were $1 a share and $15 interest a month, making in all $49, until the mortgage expired on January 10th 1863. In September 1854, Thiele rendered two accounts of the expenditures which he had made about the property. The first account is with Elizabeth Steinruck, and the significant item in it, which explains all the others, is: 'For Thiele's trouble, $100.' The account includes the price paid for Harper's judgment, the purchase-money paid for both the properties at sheriff's sale, the price of the 34 shares in the Germania Association, premiums for insurance, and the various fees of Mrs. Steinruck's counsel, as well as sheriff's costs. The second account is made with Jacob and Elizabeth Steinruck, and it repeats the enumerated items, and falsifies the amounts of many of the charges in order to swell the balance against the Steinrucks. During the interval between the conveyance to Thiele and the 1st of March 1855, a turning-point in the transaction, Mrs. Steinruck remained in possession of the property, collected the rents, and exercised all the rights of ownership.

" With these facts in view, it is obvious that the deed of June 23d 1854 was not intended to convey Mrs. Steinruck's title to Thiele for his own benefit. They indicate that he must have been acting throughout in concert with the Steinrucks, and in pursuance of a previous arrangement entered into between them.

" The history of the affair, as the evidence presents it, is, in brief, that at the beginning of the transaction, in the spring of 1854, Thiele was introduced as a friend by Steinruck to his wife. She was, it seems, at that time very much embarrassed in money matters, in consequence of liabilities which she had incurred in erect-

ing the buildings upon the premises in dispute. At a loss to discover the means to extricate herself from the embarrassment, she welcomes the offer of Thiele, and agrees to give him $100 compensation for his services, if he will borrow the requisite money from a building and loan association, and pay off the debts which hang over. Thiele undertakes the task, and immediately proceeds in co-operation with Steinruck to purchase the Harper judgment, and get by virtue of it a sale, in order to divest Steinruck's title and obtain a sheriff's deed for the premises. He then advises Mrs. Steinruck that he is unable to raise by a mortgage to the association, the money which he requires to carry out their plan, unless her title also is vested in him. Mrs. Steinruck was extremely reluctant to part with her title, although it was repeatedly explained to her that Thiele acquired no right to the property against her, but that he needed the legal title to enable him to borrow the funds from the association, and that he would, as he was in law bound to do, reconvey the premises to her as soon as he paid off the debts. It was only upon the assurance of her counsel, the late George M. Wharton, Esq., that Thiele could be compelled to restore the property to her as soon as the debts had been satisfied, and the stipulated compensation paid, that she consented to execute a deed to Thiele. In pursuance of his agreement, Thiele paid off the debts which had accumulated against the Steinrucks, and did not limit his payments to liens against the premises. The accounts show payments of individual debts as well of Mr. Steinruck as of Mrs. Steinruck. There seems to have been no difference in the understanding of the arrangement between the parties when the first account was rendered. A mistake was discovered and pointed out to Thiele, and he frankly acknowledged it. The purchase-money for the premises on the north side of Oxford street was charged twice, once in the item of $650, and again in the item of $476.94. The second account was the beginning of the quarrel. Thiele there increased his charge for services to $500, and this was at once contested, and led to the dispute. After scrutiny, the difference between the amounts which he charged the Steinrucks in the account, and the amounts which he had actually paid in settlement of the claims, was detected, and then the breach between the parties was complete. When Mr. Wharton found that he could not compose their differences, he referred Thiele to James W. Paul, Esq., as counsel, and continued to act for Mrs. Steinruck himself. The parties wrangled until March 1st 1855, when they came to an understanding, or rather a misunderstanding. Two documents (hereafter given) were drawn up, submitted to the parties, and executed by them. * * * Apart from the documents taken by themselves, and severed from their surroundings and antecedents, the relations already existing between the parties show that they

stood towards each other as debtor and creditor, and this fact once established, converts them into a mortgage. Could the instruments operate as a sale and release of an equity of redemption, coupled with an optional repurchase within three years, it would be only upon a fresh consideration for the transaction : Spering's Appeal, 10 P. F. Smith 199 ; Lauman's Appeal, 18 Id. 88. No readjustment of the account, and a compromise based upon the restatement, is sufficient to convert the mortgagee into a bonâ fide purchaser for value. Nor would it be just to allow Thiele to appropriate property which amounts in value to $18,000, when the extent of his claim for compensation was $500, which he considered at the time he executed the instruments, under which he now sets up title as an absolute purchaser, an equivalent for his services. If ever there was a case where the maxim ' once a mortgage, always a mortgage,' ought to apply, it is, according to the opinion of the master, in this case. Thiele obtained possession of the property only on the ground that he would act as trustee for Mrs. Steinruck, and that he would merely charge her with a trifling compensation for his trouble, and he acknowledged his position by rendering her accounts in accordance with the duty which the relation of trustee involves. If he takes advantage of the position which he has thus acquired, and demands additional compensation, or extorts harder terms, and she complies, in order to save her property, which she would otherwise sacrifice, it is the very kind of imposition from which the maxim was designed to relieve a helpless ces'ui que trust. The reward is out of all proportion to the price originally or subsequently demanded. The cost of building the houses, at a low estimate on a comparison of the testimony of different witnesses, is $1500 a piece for the stores and dwellings, and $600 a piece for the court-houses, making a total cost price of $11,700, and the ground doubled in value between 1852 and 1858. After the 1st of March 1855, the property was managed by Hubbard, the agent nominated by Thiele, and it was the stipulation that he should render semi-annual accounts. He did not, however, render any account until January 8th 1859, and then failed to furnish the correct information. The annual rent of the houses which were continuously occupied, amounted to $1092, and the annual disbursements reached only the sum of $846, leaving a surplus of $246 a year, or $738, which added to the $500 paid on account, and deducted from the amount stated on March 1st 1855, left a balance due Thiele of only $681.18. He, however, withholding the accounts, claimed that Mrs. Steinruck was indebted to him $2300, and on her default he put up the property for sale in April, though at the request of Mr. Arundel, the counsel of Mrs. Steinruck, he postponed the sale until May 25th 1858, when the property was sold by Thomas & Sons to Jacob Shandein for $150, subject to the

ground-rent of $186, and to the full amount of the mortgage, $6800. It will be recollected that the 34 shares of the Germania Association were bought in the summer of 1854 for $612. The dues, therefore, had obviously been paid in during several years, and in 1858 the mortgage must have run half, at least, its allotted term, and was good for only $2235. It was admitted before the master that the sale to Shandein should be treated as if it had been made directly to Thiele, to whom Shandein in fact made over the bargain.

" Great reliance is placed by Thiele's counsel upon the incredibility of the statement that the late George M. Wharton advised Mrs. Steinruck to convey her title to Thiele, in order to enable him to raise money upon it by mortgage. It is asserted that Mr. Wharton could not have given such advice, unless at the execution of the deed he took from Thiele a declaration of trust to the effect that he held the property merely for the purpose of paying the debts of Mrs. Steinruck, and would reconvey the premises as soon as the payments were made; and it is urged that a story which depends upon the possibility of such advice ever having been given by Mr. Wharton, is a transparent invention, and lacks even the appearance of truthfulness. It is submitted, however, that Mr. Wharton could have given the alleged advice, and that it would have been sound advice according to the law of Pennsylvania as it then stood, and as it stands now. It is not a question of what the law ought to be, but what the law is, or was at the period when the advice was said to have been given. It becomes necessary, therefore, to examine the law upon this disputed point. In Wharf *v.* Howell, oral testimony was admitted to show that a deed accompanied by a defeasance, which gave the privilege of repaying the purchase-money and interest within three months, was intended as a mortgage, though the defeasance contained no engagement to repay the consideration-money: 5 Binney 499. Oral testimony of the grantee's declarations is competent: Stoever *v.* Stoever, 9 S. & R. 434. On the other hand, oral testimony to show that a deed and defeasance, though dated, were not executed at the same time, and were not intended as a mortgage, but as a conditional sale, is not allowed, as it would contradict the presumption raised by the face of the documents: Kerr *v.* Gilmore, 6 Watts 405; Kunkle *v.* Wolfersberger, Id. 126; Colwell *v.* Woods, 3 Id. 188. An oral agreement to buy in at a sheriff's sale property subject to the debtor's payment of the debt within a limited period, and after that term discharged of the privilege, was proved by witnesses, although the agreement contradicted not only the absolute terms of the sheriff's deed, but also a contemporaneous written contract signed by the parties. The court remarked that oral testimony was not only usual in such cases, but

that the decisions almost invariably turned upon it: Hiester *v.* Madeira, 3 W. & S. 384; Penn. Life Ins. Co. *v.* Austin, 6 Wright 266; Couch *v.* Sutton, 1 Grant 116; Pattison *v.* Horn, Id. 301; Horn *v.* Pattison, Id. 304; McGinity *v.* McGinity, 13 P. F. Smith 38; Odenbaugh *v.* Bradford, 17 Id. 96. * * *

"A release of an equity of redemption should be governed by the same principles which regulate ordinary conveyances. If the release is accompanied by a defeasance, it should be construed as a mortgage, and oral testimony should not be permitted to controvert the presumption which arises from the concurrent execution of the deed and the defeasance. Thus, a deed in fee, accompanied by a covenant to reconvey, if the consideration and interest were repaid within a year, was held a mortgage, though the parties did not intend it to be such: Colwell *v.* Woods, 3 Watts 188; Wharf *v.* Howell, 5 Binney 499; Wilson *v.* Shonberger, 7 Casey 295. * * *

"Could Thiele be regarded in any other aspect than as mortgagee, he would stand in no better light. He would be viewed as a trustee *ex maleficio,* and a trust would then result to Mrs. Steinruck from his abuse of the position which he originally assumed towards her." * * *

The "documents" of March 1st 1855, referred to in the master's report, are:—

I. "Know all men by these presents, That we, Jacob Steinruck, of, &c., and Elizabeth his wife, in consideration of the sum of one dollar, to us in hand paid at the time of the execution of these presents, by Edward Thiele, of, &c., have remised, &c., unto the said Edward Thiele, his heirs and assigns, all our, and each of our estate, right, title, interest, use, trust, claim and demand whatsoever, both at law and in equity, which we, the said Jacob and Elizabeth Steinruck, or either of us, have, or claim to have, of, in, to or out of all that lot of ground, with the improvements thereon erected, situate, &c., in the said city of Philadelphia, in front on Oxford street * * * Being the same premises particularly described in a certain indenture, dated the twenty-third day of June, A. D. 1854, &c., and granted and conveyed by the said Jacob Steinruck and Elizabeth his wife unto the said Edward Thiele, and which Samuel Allen, Esq., sheriff, by his deed-poll dated the tenth day of June last past, &c., granted and conveyed unto the said Edward Thiele, his heirs and assigns.

"So that neither we, the said Jacob Steinruck and Elizabeth his wife, or either of us, our or either of our heirs or assigns, or any other person or persons in trust for us, or either of us or them, or in our or their names, or in the name, right or stead of any of them, shall or will, can or may, by any ways or means whatsoever, hereafter have, claim, challenge or demand any right, title or interest, property, claim and demand of, in, to or out of

the said premises, or any part thereof; but that we, and each of us, our and each of our heirs and assigns, and every of them, from all estate, right, title, interest, property, claim and demand of, in, to or out of the said premises, or any part thereof, shall be by these presents for ever excluded and debarred."

II. "Agreement made this 1st day of March, A. D. 1855, between Edward Thiele, of, &c., of the one part, and Elizabeth Steinruck, wife of Jacob Steinruck, of the said city, of the other part, witnesseth that the said parties hereby mutually agree to and with each other as follows, to wit:—

"1. The said Edward agrees to sell at any time within three years from the date of these presents to the said Elizabeth, on the conditions hereinafter stated, the premises on the south side of Oxford street, &c., described in the deed from the said Jacob and Elizabeth to the said Edward, dated the 23d day of June 1854, for the price of $1919.18, subject to the ground-rent and the mortgage upon the premises due the Germania Saving Fund Association, interest on the said price to be added and paid to the said Edward from the date of these presents until the said purchase-money is paid.

"2. The said Edward also agrees to appoint Benjamin Hubbard his agent to collect the rents and to attend to the property for him, and to apply the rents, as received, to the payment of the ground-rent, the dues to said association on their said mortgage, the taxes, water-rents, commissions, repairs and other necessary disbursements incident to and requisite to the property, and the surplus of rents then remaining to be paid over to the said Edward; and in case this contract is complied with, he is to credit said surplus on account of the purchase-money. The agent will submit said annual accounts of his agency to the said Edward, who will show them to the said Elizabeth, and the said agent shall not be removed from said agency while faithful to his trust, but if delinquent, the said Edward will displace him and appoint a suitable new agent.

"3. That said Edward agrees to let to the said Jacob the dwelling-house, &c., for the term of three years, at the rent of $150 per annum, payable quarterly.

"4. The said Edward further agrees that if the said Elizabeth shall pay to him within the time above stipulated, the price above agreed upon, with lawful interest as aforesaid, to execute and deliver a sufficient deed, to vest in her an estate in fee simple for the said premises, to be free of all other encumbrances, except the present ground-rent and the mortgage due the association; but in default of such payment, this agreement of sale shall be deemed void and of none effect, except that the said Edward may recover by all lawful means the rent due and unpaid by the said

[Steinruck's Appeal.]

Jacob for his occupation of said dwelling-house. The said Edward also agrees that within thirty days prior to the expiration of said three years he will, at the written request of the said Elizabeth, upon being tendered the expenses of public sale, offer the premises hereinbefore agreed to be sold .at public sale, and if the net proceeds of sale, over and above the said ground-rent and mortgage, shall exceed the sum agreed to be paid as aforesaid by the said Elizabeth, with interest from this date, the said Edward will account for and pay over the excess to the said Elizabeth.

"5. It is further agreed that the stipulations of this agreement shall bind the legal representatives of each party respectively to the same extent as they are obligatory upon the parties themselves. The said Elizabeth may also pay the said purchase-money by instalments, and if the whole with interest is paid within the said three years, the said Edward agrees also to transfer to her, the said Elizabeth, the shares of stock of the said association belonging to said mortgage, and standing in his name. Provided always, That nothing in this agreement contained shall be construed to pass any interest or title in the said premises, or any part thereof, to the said Jacob, or to the said Elizabeth, until the purchase-money with interest is paid as aforesaid, except the right of occupation by the said Jacob of the dwelling-house aforesaid for the said term, upon payment of the annual rent above agreed upon."

The master recommended a decree:—

" That the respondents, Edward Thiele and Sophia Thiele, do convey, by good and sufficient deed or deeds in law, to the complainant, Elizabeth Steinruck, the real estate described in the bill of complaint in this case, and that the said Edward Thiele render her an account of the rents and profit which he had derived from the said real estate since the 25th day of May 1858."

The defendants filed exceptions to the report of the master.

After argument at Nisi Prius the court (Sharswood, J.) dismissed the bill. `

The plaintiffs appealed to the court in banc, and assigned the decree of dismissal for errors.

*J. M. Arundel* and *W. L. Hirst*, for appellants.—The law presumes that the deed of Mrs. Steinruck to Thiele, of March 1st 1855, with the accompanying agreement of Thiele of the same date to reconvey, was but a mortgage of her estate to him: Harper's Appeal, 14 P. F. Smith 315; Colwell *v.* Woods, 3 Watts 188; Kerr *v.* Gilmore, 6 Id. 405; Jaques *v.* Weeks, 7 Id. 261; Brown *v.* Nickle, 6 Barr 390; Reitenbaugh *v.* Ludwick, 7 Casey 131; Wilson *v.* Schoenberger, Id. 295; Kunkel *v.* Wolfersberger, 6 Watts 126.

[Steinruck's Appeal.]

It must appear beyond all question that Mrs. Steinruck not only intended an absolute sale, but that she made it voluntarily, without undue influence or imposition having been practised upon her, and that she actually received a fair and full price therefor anything short of this, and it remains a mortgage: Reitenbaugh v. Ludwick, 7 Casey 131.

What was originally intended to be a mortgage cannot afterwards be changed by the agreement of the parties into an absolute deed: Kunkel v. Wolfersberger, 6 Watts 126; Friedley v. Hamilton, 17 S. & R. 70; Kelly v. Thompson, 7 Watts 401; Spering's Appeal, 10 P. F. Smith 199; Odenbaugh v. Bradford, 17 Id. 96.

*R. C. McMurtrie* (with whom was *J. W. Paul*), for appellees.— To constitute a transaction a mortgage, the consideration should be a loan; that the relation of debtor and creditor should exist; that there should be mutuality, *i. e.*, a right to compel repayment of the money. It is not necessary that a covenant or an express contract to pay should be shown, but there must be a liability which the creditor can enforce: Goodman v. Grierson, 2 Ball & Beatty 275; Williams v. Owen, 5 Myl. & Cr. 303; Ensworth v. Griffiths, 5 B. P. C. 184; Tasborough v. Echlin, 2 Id. 265; Perry v. Meadowcroft, 4 Beav. 197; Ogden v. Battens, 19 Jurist 791.

A release of an equity of redemption discharges it as completely as if it never existed: Reynolds v. Perkins, Ambler 564; Greggs v. Sturgess, 5 Hare 96; Fisher L. of Mortg. 662, 664; Massey v. Johnson, 1 Exch. (W., H. & G.) 241; Vernon v. Bechtell, 2 Eden 110; 3 Sug. Vend. 228*; Chambers v. Waters, 3 Sim. 42; Davis v. Thomas, Tamlyn 416.

The opinion of the court was delivered, May 13th 1872, by
AGNEW, J.—The master in this case found, and his finding was affirmed at Nisi Prius, that the original transaction between Mrs. Elizabeth Steinruck and Edward Thiele was a loan, and the deed of June 23d 1854 was a mortgage. The case comes down, therefore, to the deed of release, and the agreement between the parties on the 1st of March 1855. The master came to the conclusion that these instruments did not change the former character of the transaction, and that they also constituted a mortgage. Our brother at Nisi Prius inclined to think, but did not decide, that the new arrangement was by way of a compromise, and instead of ordering an account, while the question remained in doubt, considered that it was better to let the case come into the court in banc by appeal, reserving his own opinion until that time. The decree at Nisi Prius was therefore merely *pro*

*forma*, and we are left to decide the case on the report of the master and the evidence.

Were it not for the presence of eminent counsel when the release and agreement of March 1st 1855 were consummated, I would say. they were a fraud upon Mr. Steinruck. The evidence tends to show that false vouchers were produced by Thiele to a large amount, and Thiele denied strenuously what the evidence now convinces us of, that the original transaction was that of loan and mortgage. The new agreement was intended by counsel to end that controversy, but it is not at all clear that the counsel themselves were not imposed upon by the false vouchers. Indeed the evidence now convinces me of that fact. Clearly Mr. Steinruck did not owe Thiele the sum of $1919.18, or the half of it, on the 1st of March 1854. But passing by this part of the case, and suffering the agreement of that date to stand as a valid resale of the premises, the plaintiffs on the facts are entitled to an account and to a decree for a reconveyance on the payment of any balance that may be found to be due Thiele, on the ground of a fraudulent execution of the terms of this agreement by Thiele. This will appear by an examination of its character and the conduct of Thiele under it.

It is very clear that by its terms the interest of Thiele in the property was reduced to the sum of $1919.18 in money with interest from date; and that the net rents of the premises were the property of Mrs. Steinruck, the agreement itself providing that the net rent after payment of the taxes, &c., should be a credit on the purchase-money. And besides this, she was entitled to a public sale of the property before the expiration of the term of credit (three years) for the very obvious purpose of enabling her to realize her large interest in the property above the money to be paid Thiele in case of her inability to raise the means to pay him. It is evident that the time of payment of this sum of $1919.18, was made of the essence of the contract, but it is equally true that this sum was not the entire value of the property, but was merely a stated sum of money, at which Thiele's interest in the property was fixed by the contract. It is obvious, therefore, that in equity he did not own the property out and out, though by the compromise and the making of time of the essence of the contract, he would become so, on the failure of Mrs. Steinruck to make payment, if his title were not in the mean time intercepted by the execution of the contract through the public sale it provided for.

This being his true relation to the contract, it is manifest that equity will require of him the utmost fairness in the execution and enforcement of the contract by public sale, and will set the sale aside and decree a reconveyance if he has fraudulently used the public sale as a means of vesting title in himself.

In view of these principles let us examine the facts. In the

year 1857, Mrs. Steinruck left Philadelphia, and in 1858 was residing in Ohio. She came to Philadelphia before the termination of the three years' credit to obtain a settlement with Thiele.

By the terms of the agreement she was entitled to a credit for the surplus rent in payment of the money coming to Thiele, and this necessarily involved the settlement of an account by him. She called on him but could obtain no satisfaction. Under the advice of counsel she then went to him to demand a settlement and to tender payment. He refused in a coarse and improper manner to have anything to do with the matter. In February 1858, before the expiration of the time, her counsel notified Thiele to make a public sale of the property according to the terms of the agreement. Mrs. Steinruck denied the authority of her counsel to do so, but this has become immaterial since the sale was in fact made under his notice.

Thiele offered the property for sale in April, and then at the instance of counsel continued the sale until the 25th of May 1858, when the property was knocked down to Jacob Shandein for the sum of $150, subject to a ground-rent of $186, and the mortgage of the Germania Building Association of $6800. The auctioneer's advertisement called for a *peremptory* sale, subject to the $186 ground-rent and $6800 mortgage. In pursuance of this sale Thiele conveyed to Shandein by deed dated June 4th 1858. The master reports that it was admitted before him "that the sale to Shandein should be treated as if it had been made directly to Thiele, to whom Shandein in fact made over the bargain." Accordingly, Shandein and wife conveyed the property to Mrs. Sophia Thiele, the wife of defendant, by deed dated January 31st 1859. At that time the cost value of the property as found by the master, upon the evidence, was $11,700; and the ground, he adds, had doubled in value between 1852 and 1858.

The mortgage, as the master reports, could not then have exceeded $2235, and the balance due to Thiele was but $681.18 after crediting the net rents and $500 paid in cash by Mrs. Steinruck. At the time when the testimony was taken the property was proved to be worth $18,000.

In view of all the facts, the conclusion is irresistible that the sale to Shandein was a mere sham, and its result was to invest Mrs. Thiele with the title for the sum of $150, without a settlement of any account between Thiele and Mrs. Steinruck, or anything to inform bidders of the true situation of the property and the extent of the real encumbrances upon it. Thiele, in his answer, insists on the nominal sum in the mortgage, $6800, as the true amount, on the ground that the stock in the Germania Association was his own, and it was at his option, therefore, whether the stock should be applied (as it was subsequently) to the payment of the mortgage. But in this assertion he is contradicted by his own

[Steinruck's Appeal.]

account, in which he took credit for $850 paid to G. Seubert for thirty-four shares of the Germania Association, and $3.50, the fees of the transfer. Thus by withholding an account and by unfairness in the sale, he has contrived, by an apparent execution of the contract, under the notice of Mrs. Steinruck's attorney, to invest his wife with a title to the whole property, for a mere nominal sum paid by himself, no consideration whatever passing from her. This he did when his own mere money demand had been reduced by rents and payment to the small sum of $681.18. Clearly this is such unfairness and bad faith as will set aside the sale as false and merely colorable, and will prevent him from raising any question of specific performance. Having himself executed the contract by a sham sale, he is estopped from denying the title of Mrs. Steinruck on the ground of fraud, and will be compelled to render an account and to reconvey upon payment of all that is fairly due and unpaid to him.

It is therefore now ordered and decreed that the decree at Nisi Prius be reversed, that the bill of the plaintiffs be restored, and that the defendant, Edward Thiele, do account for the rents and profits of the premises before a master of this court, and for this purpose James Parsons, Esq., is appointed master, to take and state the account, and to report a final decree for a reconveyance of the premises by the defendants in fee simple, upon such terms as shall appear to be just and equitable, according to the circumstances, and that the costs abide the further order of the court.